Case No. 21-1533 H&H Wholesale Services, Inc. v. Camp Strands International, B.B. et al. Argument not to exceed 15 minutes per side. Mr. Holtz, you may proceed for the appellant. Come on up. Thank you, Your Honors. Ethan Holtz for the appellant, H&H Wholesale Services. May it please the Court. Are you going to do seven minutes of rebuttal? No, Your Honor. I shortened my time. Okay. Yeah, I've never seen that before. So how much are you taking? I'm going to go nine and six. Okay. All right. That still sets a record, but go ahead. I may not need it all. Sure. Your Honor, in deciding the defendant's motion to dismiss, the district court really had one principal analysis to make, and that was, did the plaintiff, pursuant to the standard provided by Iqbal and Twombly, plead facts in its complaint sufficient to sustain a claim for relief that the corporate veil between the defendant and its subsidiary entity should be pierced? If the answer to that question was yes, and plaintiff adequately pled facts that would support for veil piercing, the motion should have been denied. That's because this court ruled in Saris v. First Tennessee Bank that where the jurisdictional facts are inextricably intertwined with the facts of the claims for relief, the plaintiff's well-pleaded allegations must be accepted as true, and contrary evidence submitted by the defendant in support of its motion should be disregarded for the principle that the court should not slam the door to the federal courthouse to the plaintiff by the lack of its ability to prove its substantive case at the jurisdictional stage. I thought we had an awful lot of authority that would significantly narrow the scope of, including Sarah. I mean, Sarah says when facts are disputed is the opening clause of that sentence. And when facts are disputed, then you sort of, I don't know, look at the record in, so to speak, the light most favorable to the plaintiff. But we have plenty of cases, don't we, that say, hey, you know, at this stage of the case, if the defendant comes forward with an affidavit with specific allegations, not conclusory ones, that says, no, no, no, no, no, no, these guys, you know, they paid their own way, they've got their own CEO, et cetera, then it's the plaintiff's burden to come forward with something similar, an affidavit that makes specific refutations as opposed to conclusory ones of that affidavit. We've got all kinds of case law that says that, don't we? Yes, Your Honor. But there is also case law from the Sixth Circuit which addresses what disputed actually means. And disputed is not the traditional sense of a Rule 56 motion where the defendant says one thing and we say the exact opposite. What this Court said in 2002 in Neogen Court v. Neogen, cited in our reply, is that facts are disputed if there is conflict in them as to what is alleged by the plaintiff. Meaning the plaintiff makes its allegations and the defendant has taken a contrary position. That means the facts are disputed and that's what triggers the Court's duty to turn away from the defendant's affidavit and look at what the plaintiff is saying. Because the plaintiff can't dispute what the defendant is saying in its affidavit. They haven't had the opportunity to take discovery from the defendant yet at the jurisdictional stage. Does the plaintiff have to come forward with an affidavit or can the plaintiff just rely upon the complaint? The plaintiff is permitted to rely on the allegations in its complaint. In this case, the plaintiff didn't do that. We had not just the allegations in the complaint, but we submitted deposition testimony from the 30B-6 of the subsidiary company as well as certain documentary evidence. Did you ask for an evidentiary hearing? The plaintiff did not ask for an evidentiary hearing. Why not? It's not the duty of the plaintiff to ask for an evidentiary hearing. I'm saying it is. I'm just saying, why didn't you? Well, Your Honor, the opportunity, we believe, it wasn't necessary. It sounds like you took a gamble. I don't believe it was a gamble, Your Honor, because under the facts that had already been developed in the 30B-6 deposition of the subsidiary company, we found out that this company that had been represented to my client as a 100-year-old Dutch distributor, one of the largest, oldest, most successful respected companies in Europe, worth several hundred million dollars, listed on exchanges. My client had been dealing with them for years. We found out two years into this litigation, sitting in a room in the Netherlands, that the company my client was actually dealing with had two employees and was shut down just weeks within striking distance of when my client's facility was raided by Abbott Laboratories and its attorneys and had its business essentially eviscerated. Okay, so your first argument is that we should only look at the complaint because you've set out your prima facie case in the complaint. We have to disregard the affidavit. That's your first position, correct? Correct, Your Honor. And your next position is, if we do consider the affidavit from the defendant, consider your affidavit also or other proof that you've submitted and that you have established the prima facie case then? Yes, Your Honor, although I don't think the defendant's facts should be considered at all. We do have more than just an affidavit. We have evidence in the form of e-mails and the deposition testimony. Well, how do you deal with, I mean, there are certain facts brought out in B&S's, the affidavit they submitted, which are just not refuted by you. They're not addressed in your proof. Well, and that's why the court in Saris and the Thanissian case, Thanissian v. Matthews, which both courts have cited, says that at this stage of the litigation, we shouldn't have to dispute that affidavit because we haven't had the opportunity to dive into the facts that they're asserting. The court shouldn't just have to take the defendant's word for it because at that point, which is essentially what they're asking to do. I mean, I understand your argument. I certainly sympathize with the situation your client found themselves in, as you describe it at least. But you have to have a certain quantum of knowledge about a party's responsibility before you sue them, right? It can't just be, you know, I think there's a chance and I need to find out more, so let's file a suit. I mean, and so, I mean, Saris says that the court can take one of three approaches, one of which is the court may determine the motion on the basis of the affidavits alone. And that suggests the court looks at both. Is that fair? Well, yes, Your Honor, but what Saris also says is when the court chooses that avenue, it has to follow this procedure, which is disregarding the defendant's facts. Wait a minute. I mean, how does that comport with consider the affidavits both? Well, Saris starts by saying that, and I'll point the court again to the Finucian case, which was decided later. And what the court specifically said about what the district court did there, which is what the district court did here, is deciding the issue upon the affidavits as the district judge, as he did. The district judge was obligated to examine each of these plaintiffs' factual allegations, notwithstanding Matthew's, the defendant's, contrary affidavits. Yet in each instance, the court relied upon Matthew's uncontroverted affidavit to find summarily that the alleged contact did not exist. In doing so, the court erred. Dismissal was only proper if all the specific facts that Finucian, the plaintiff, alleged, collectively failed to state a prima facie case for jurisdiction and under the appropriate standards. Because the district court erroneously held the alleged business contacts did not exist, it did not subject to this analysis. It's exactly what the district court did here. They looked at the defendant's affidavit, said, These are the facts. Defendant has presented them. We think they're fair. We can't pierce the barrel on it. But, I mean, again, back to Saris. It says the court decides to go on written submissions alone. It's obligated to look solely at the plaintiff's pleadings and affidavits. If those stated the facts with sufficient particularity, it was obligated to ignore contrary assertions by the defendant. And what they're saying is your affidavit didn't do that. It was conclusory. They were specific. And so it doesn't seem to meet the threshold requirement of Saris for ignoring what they say. It's not really in dispute because it's just conclusory. Respectfully, Your Honor, that's not what the district court ruled. It wasn't in our affidavit. Forget about the district court for a second. I'm talking about what Saris said, you know, which is the case you're relying on. Well, that case is not this case. In fact, the district court. Okay, but why doesn't the rule I just read aloud apply to this situation is what I'm asking. Because the plaintiff did not submit purely conclusory facts here. All right, so that's where this boils down to. We look at the affidavits. And if we think yours are specific enough, then you're okay. But if they're conclusory, you're not okay. Is that fair? I believe. Well, okay. All right. So now. Yes, you have to. If my. If my. If you want to go into your rebuttal, you can. I will. My question. Yes. Okay. If my client's affidavit is specific enough, your honor, and complaint allegations are specific enough to plead the facts of a claim, then you disregard what the defendant is alleging in opposition. And in this case, the judge said specifically H&H's allegations are not out of left field. They presented facts that B&S's parent company and the defendant, Canstrip, both represented themselves to the world and the plaintiff as one company. They shared an address and office space. They shared a legal department. They shared financing and accounting departments. Technology. They used the same customer relationship management enterprise resource planning software. Did you approve of this procedure by the district court, the way it handled this, or did you suggest it should have done something else? Well, we did suggest on reconsideration it should have followed the standard laid out by Saris. And because we made the specific allegations that we were just talking about, and not just the allegations but supported by evidence. Did anyone raise that Malone against Stanley Black, or was that out at that time? Or have you considered that case? Your honor, it was not raised. Because we believe the district court focused on what the defendant was saying improperly. In the district court's words, after analyzing the defendants affidavit, that said they didn't abuse corporate formalities, the subsidiary company had its own computers, they had separate inventory and assets, things of that nature, the district court said it wouldn't be fair to hold them to a veil-piercing standard. Fair almost begs the analysis that the district court was making factual determinations on this. It shouldn't have looked at that stuff. Because as I was running down the list of what the plaintiff alleged and had evidence of, and I can keep going. Well, why don't we hear from Mr. Hudson. Thank you. You'll have some rebuttal. Good morning, your honors. Paul Hudson on behalf of the defendant appellee, B&S International, BV. James Willard is here on behalf of Camstra, but I'll be the only one presenting argument at this point. On whose behalf are you arguing? B&S International, BV. We filed the motion to dismiss for lack of preference. Okay, all right. You weren't on the brief, though, correct? That's correct, your honors. All right, that's fine. A latecomer to this case. Yeah, go ahead. Your honors, B&S International, big picture here, has no contacts with the state of Michigan. It's a Dutch company that conducts no business in Michigan, has no employees or offices there, nothing at all to do with the state of Michigan. The plaintiff's only theory for hailing B&S into court 4,000 miles away in Detroit is that it's the corporate great-grandparent of a sub-sub-subsidiary that seven years ago signed a contract with the Michigan Forum Selection Clause. Now, that's an uphill fight, and the district court here, in two, I thought, thoughtful and thorough opinions, held that there is no personal jurisdiction. I want to respond directly to the argument here that this is a Twombly and Iqbal standard and that the district court was not allowed to consider anything in B&S International's affidavit. That argument is squarely foreclosed by controlling precedent. This court has held at least a half a dozen times in published decisions that, quote, in the face of a properly supported motion for dismissal, the plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction. That's from the Thunesen case. What was the name of that case? Thunesen, T-H-E-U-N-I-S-S. When did that come out? That was 1991. Anything that's not, like, 30 years old in this case? Sure. There's a decision by Judge Seiler and joined by Judge Kethledge from 2012 called Miller v. AXA. Same quote is in that opinion. Same quote. Same quote. Parker v. Wynwood, Weller, others. Judge Kethledge, you said there was an awful lot of authority here. If you pull up Westlaw and go to that headnote, 553 citing authorities. That's the rule here. That's the standard. The plaintiff argues that the Saris decision in 1989 changed that standard for cases where merits and jurisdiction are intertwined. That exact same quote, more or less, is in the Saris case at page 1214. If the court rules on written submissions alone, the plaintiff may not rest on his pleadings to answer the movement's affidavits but must set forth by affidavit or otherwise specific facts showing that the court has jurisdiction. What Saris involves... Do you agree, though? I mean, okay, so then they can't just sort of rest on their pleadings. If you come up with a specific affidavit, they have to come up with one, right? Exactly right. And if they kind of join the issue at the level of specificity that you have, or at least at a sufficient level of specificity, would you agree at that point the district court has to say, okay, at least for now we're going to go forward until we sort of make actual determinations about these facts that would give rise to jurisdiction? Yes, or at least the district court has options at that point. And that's what Saris says. Once you have competing affidavits, what do you do next? Do you hold an evidentiary hearing? raised in its affidavit that went unrefuted by H&H that destroyed or established that there's no personal jurisdiction? Well, just about everything went unrefuted. I mean, it's a nine-page, 32-paragraph detailed affidavit that showed that these are separate entities. What would you say the most important facts are that you established in the affidavit that went unrefuted? That B&S and Camstra maintained their own financial books and records, bank accounts, lines of business, inventory assets. B&S didn't make the day-to-day decisions. Camstra is independently capitalized. But I think probably the most important part of this is the whole theory of the veil-piercing allegation. The alleged fraud or wrong that was done by B&S International was, as plentiful as it is in the complaint, that B&S transferred all of the assets out of Camstra for, quote, little or no consideration and left Camstra an empty shell. That's the whole basis of their claim. The affidavit came back and showed that that wasn't true. Camstra is not an empty shell. And, in fact, its assets were sold for fair market value to this CAFA entity. About $3.5 million. As $3.5 million, that's not an empty shell by any stretch of the imagination. And CAFA is still in the suit. And CAFA is still in the suit. And so the plaintiff, essentially, is in no worse position than if Camstra had not been wound up. Because before, Camstra was a company with $3.5 million worth of assets. And then after the wind-down, Camstra is a company with $3.5 million. The latest financial statements, and these are attached as an exhibit, as of March 2020, still had about $1 million worth of assets. And the plaintiff's claim here is, well, we wish it were more. But undercapitalization refers to a parent sucking assets out of a subsidiary. There is no allegation, no evidence here that these assets went to B&S International. All that information came from the defendant? That's correct, yes. Then the plaintiff didn't counter with anything else? Exactly right, Judge Siler. And, you know, this is not a case where a complaint was filed and then there was an immediate motion to dismiss, and the plaintiff hasn't had the benefit of any information or discovery. This case has been going on since 2017. Did H&H agree to this procedure by the district court? They sure did, Judge Siler, and I'll quote from their brief. Quote, the B&S defendants have asserted a factual challenge to the TAC through its supporting affidavit, thus opening the door for H&H to support its pleadings with affidavit or other evidence. They went on to say courts across the country have permitted other evidence to accompany affidavits responding to jurisdictional challenges. So they agreed that the district court could consider B&S's affidavit, and it was only later in the motion for reconsideration where they first claimed that the Saris case changed all that. Can H&H still file suit against your client in Europe? Well, I don't think they have any basis. I mean, is there still time where they could file suit? I don't know the answer to that, Judge Siler. But I think just to go back to Saris to put a bow on this, what Saris is saying is once you have competing affidavits and merits and jurisdiction are intertwined, what's a district court supposed to do? You can hold an evidentiary hearing or you can defer that issue until trial because the standard is going to be the same. It's a preponderance of the evidence standard, and so in some cases it might make sense to just punt that issue to trial to deal with it all at once. What it certainly did not say was that district courts are required to ignore a defendant's unrebutted affidavit. Your Honors, I'd be happy to answer any other questions. Otherwise, we ask the Court to affirm the judgment. All right. Thank you. Thank you, Your Honors. We'll hear rebuttal. Thank you, Your Honors. Counsel just agreed with me and agreed with Your Honor when he said that if the plaintiff in this case had raised specific facts, not conclusory allegations, then the case goes forward and the jurisdictional issue gets decided at a later date. The fact that the defendant's submitted evidence is unrebutted is specifically because of the fact that the plaintiff hasn't had any opportunity to take discovery into that evidence. Okay, fair or not, that's not what these cases are saying. They're saying you must come up with a specific affidavit in response, period. Fair or not. I don't see where you contradicted Camstra didn't buy its supplies or inventory from B&S or that they kept separate financial records or that B&S didn't wholly capitalize Camstra, et cetera. They specifically said here are a bunch of indicia of truly separate existence. And respectfully, Your Honor, the Neogen case says I don't need to dispute those. I don't have to say, yes, they did commingle their books and records and commingle funds. What it says is because their facts tell a different story than what my client is alleging, that the court is to disregard those facts to give my client the opportunity to take discovery into them. Did you ask for jurisdictional discovery from the district court? We did not have the opportunity to do that. Why didn't you have the opportunity? Because we submitted our papers and the court ruled. But couldn't you have asked for it? I'm sorry, Your Honor. You agreed to that procedure, not wait for discovery and any of that. I don't know that we agreed to it, Your Honor. Your Honor, we submitted specific evidence in our supporting papers, which we believe support the denial of the motion. And I want to speak for a second about the principle of veil piercing here and focus on the fact that what the plaintiff has brought forward are not just conclusory allegations, but we had deposition testimony. We had documents, all the things that we say. They filed consolidated tax returns. They only had two employees at these companies. The employees... That was after the wind down, right? No, ever. They only ever had two employees at this company. And those employees, the entire time they were doing business with my client, their direct reports and all the authority over their decisions was made by parent companies. But not by B&S. I mean, I didn't see anything here that would get you that far up the food chain. Well, there is, Your Honor. Thank you for mentioning that. B&S's CFO, Garrett Van Laar, and this is a unique point, is the one who submitted the affidavit that defendant relied on. He's defendant's CFO, okay? B&S's CFO. Two years before that, in support of Camstra, the subsidiary company's initial motion to dismiss the complaint, their 12B2 motion before B&S was a party, the same guy, Garrett Van Laar, B&S's CFO, submitted an affidavit in support of that motion. And he said, I'm familiar with the day-to-day operations. I'm familiar and involved with the transactions between H&H and Camstra. I have knowledge. So there is that supporting chain. And they ultimately are the ones, and we had evidence, that Burt Muehlman, the ultimate CEO, was the one who decided to shutter this company after my client got raided for selling their foreign counterfeit product. So what the court of Michigan said, and this is longer than 30 years ago, Your Honor, this was in 1947, in a case called Herman v. Mobile Homes Court, is whether the corporate veil should be pierced comes down to a question of good faith and honesty in the use of the corporate privilege for legitimate ends. If a corporation is owned and controlled by another and is manipulated by the owner for its own purposes and in its own interest to the prejudice of innocent third parties or the public welfare, it may be necessary to limit such abuse of the corporate capacity or shield. That's exactly what we have here. We have a parent company that is manipulating the use of its subsidiary corporate entity to the prejudice of the interest of an innocent third party. My client was an innocent. They didn't know they were buying counterfeit goods from this campster entity. Yeah, and that's about the merits of those transactions. The CFO affidavit, the one that was two years before, you guys didn't draw that to the district court's attention, if I recall. Is that correct? It was cited in our brief, Your Honor. It was not laid out in great detail, but it was cited and attached as an exhibit to our brief. All right. You didn't really construct an argument based on it, right? It was just one of a bunch of sort of record sites floating around. It was a little more than a record. It was a bullet point. We are constrained by all the facts we can bring out. That was not on reconsideration? It was in the initial? It was in the initial brief. Okay. Still foul-suited in the Netherlands against these parties? Well, I think ultimately, Your Honor, on these claims, breach of contract, honestly, I don't know what the statute of limitations on a breach of contract claim is. That's where they claim that they're based, right? Yes, they are, and I've been there. Okay. So that is true. All right. Well, thank you both for your arguments. The case will be submitted, and the clerk may adjourn court. Thank you very much, Your Honors. Thank you. The honorable court is now adjourned.